UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 24, 2017

LETTER TO COUNSEL

      RE:   *Wanda Rice v. Commissioner, Social Security Administration*;
               Civil No. SAG-16-2582

Dear Counsel:

On July 15, 2016, Plaintiff Wanda Rice petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. Rice's reply. (ECF Nos. 14, 17, 22). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Rice filed a claim for Supplemental Security Income ("SSI") in May, 2012, alleging a disability onset date of July 1, 2002. (Tr. 135-41). Her claim was denied initially and on reconsideration. (Tr. 57-69, 71-86). A hearing was held on November 24, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 28-56). Following the hearing, the ALJ determined that Ms. Rice was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 9-27). The Appeals Council denied Ms. Rice's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Rice suffered from the severe impairments of "degenerative joint disease, acromioclavicular ("AC") joints, greater on the right; disc osteophyte complex with stenosis, cervical spine; degenerative arthritis of the lumbar spine; fibromyalgia; and mental disorders diagnosed to include bipolar disorder, depressive disorder and generalized anxiety disorder." (Tr. 14). Despite these impairments, the ALJ determined that Ms. Rice retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except: occasional pushing and pulling with upper extremities; occasional climbing of stairs and ramps; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; occasional reaching overhead (above the shoulders) and occasional exposure to vibration. She can perform unskilled work at an SVP 1 or 2 involving simple routine tasks that has [*sic*] no contact with the general public.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Rice could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 21-23).

Ms. Rice raises two primary arguments on appeal: (1) that the ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); and (2) that the ALJ failed to properly evaluate the opinion of the treating nurse practitioner, Ms. Sanford.[1] Pl. Mot. 5-16. I concur that the ALJ's opinion is deficient under *Mascio*, and therefore remand to allow compliance with that decision. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Rice is not entitled to benefits is correct or incorrect.

Beginning with *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id*. at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id*.

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id*. at § 404.1620a(c)(4). In order to

---

[1] Ms. Rice also argues that the ALJ did not provide her with a full and fair hearing. Pl. Mot. 3-10; *see* 20 C.F.R. § 416.1441. Specifically, Ms. Rice, who was unrepresented at the administrative level, contends that the ALJ failed to "ensure [she] could review her records[,]…explain the role of the vocational expert and [] assist [her] in asking any questions of [the VE]" at the hearing. Pl. Mot. 4. "[I]n *pro se* cases, ALJs have 'a duty to assume a more active role in helping claimants develop the record.'" *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) (quoting *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980)). However, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Crussiah v. Colvin*, No. CIV. TMD 12-2307, 2014 WL 3778615, at *12 (D. Md. July 29, 2014), aff'd, 589 F. App'x 76 (4th Cir. 2014) (internal citation and quotation marks omitted). Indeed, "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). Ultimately, because the ALJ's RFC analysis warrants remand, the ALJ should, on remand, adequately develop the record to ensure that Ms. Rice receives a full and fair hearing.

satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See*, *e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id*. at § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id*. at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id*. The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In the instant case, the ALJ found Ms. Rice to have moderate difficulties maintaining concentration, persistence, or pace. (Tr. 15). The entirety of the analysis states, "[Ms. Rice] alleges trouble concentrating; however, she is able to provide a coherent and sequential history. She reads and can independently handle her finances. Mental status examinations also show intact memory and thought processes." (Tr. 16). According to 20 CFR § 404.1520a(c)(2), the rating of "moderate difficulties" is supposed to represent the result of application of the following technique:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

20 CFR § 404.1520a(c)(2). Once the technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 CFR § 404.1520a(e)(4). The cursory analysis provided by the ALJ in Ms. Rice's case suggests that the finding of "moderate difficulties" was based exclusively on Ms. Rice's allegation that she has difficulty concentrating, since the remaining sentences in the analysis would suggest mild or no limitations. Without further explanation, I am unable to ascertain whether the ALJ truly believed Ms. Rice to have moderate difficulties in concentration, persistence, and pace, instead of mild, or no difficulties, and how those difficulties restrict her RFC to "unskilled work at an SVP 1 or 2 involving simple routine tasks[.]" (Tr. 16). Indeed, the ALJ's analysis entirely fails to address Ms. Rice's ability to sustain work over an eight-hour workday. In light of this inadequacy, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should consider the appropriate level of limitation in the area of concentration, persistence, or pace and, if a moderate limitation is again found, should explain the reasons for that finding in order to permit an adequate evaluation of the moderate limitation under the dictates of *Mascio*.

Second, Ms. Rice contends that the ALJ failed to properly evaluate the opinion of the treating nurse practitioner, Ms. Sanford. Pl. Mem. 13-15. As an initial matter, Ms. Rice concedes that Ms. Sanford, a certified registered nurse practitioner, is not an acceptable medical source. Pl. Mot. 13. Because a CRNP is not an "acceptable medical source," Ms. Sanford cannot give a "medical opinion" or be considered a treating source. Social Security Ruling ("SSR") 06-3P. Whether a source is an "acceptable medical source" or not is a factor that may be considered in assigning weight to that source's opinion. *Id*. However, the opinion of a non-acceptable medical source, such as a CRNP, is relevant in determining the severity of an impairment and its impact on an individual's ability to function. *Id*. SSR 06-3P explains that the same factors that apply to evaluating the opinions of medical sources apply to evaluating the opinions of other sources. *Id*.

Contrary to Ms. Rice's assertion, the ALJ cited a variety of those factors as reasons to discount Ms. Sanford's evaluation of Ms. Rice's capabilities. (Tr. 21). Ms. Sanford opined that Ms. Rice "could lif[t] less than 10 pounds, and never squat, reach or crawl and her medical condition limited her ability to work indefinitely on and after May 30, 2012 but did not impair her ability to attend school or training." *Id*. However, the ALJ assigned Ms. Sanford's opinion "less weight" because it was inconsistent with the medical evidence and unsupported by the

objective record. *Id*. Specifically, the ALJ noted that "[Ms. Sanford's] treatment notes…do not support the degree of limitations opined[.]" *Id*. For example, the ALJ noted that "the objective findings do not reference the type of weakness or range of motion abnormalities to support the degree of limitations opined." *Id.* In addition, the ALJ noted Ms. Sanford's finding that several of Ms. Rice's physical symptoms "responded to treatment." *Id.* Moreover, substantial evidence in the record belies Ms. Sanford's findings, including "essentially normal" physical examinations, (Tr. 18), "generally stable" physical symptoms "with appropriate medications and treatment," *id.*, "normal" mental status examinations, (Tr. 19), and "essentially routine and conservative" mental health treatment "with no current psychiatric hospitalizations, outpatient or emergency room treatment or any current treatment with any mental health care professional for her alleged depressive and anxiety symptoms," (Tr. 20). Consequently, the ALJ concluded that the objective medical record did not support Ms. Sanford's opinion. Thus, the ALJ did not simply reject Ms. Sanford's opinion as an opinion from a non-acceptable source, but engaged in an appropriate analysis of the merits of her opinion in light of the other evidence of record. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Rice's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, the ALJ properly evaluated Ms. Sanford's opinion and supported her conclusion with substantial evidence.[2] Remand on this basis is therefore unwarranted.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[2] The only portion of Ms. Sanford's opinion that was not sufficiently addressed was the conclusion that Ms. Rice would have extreme deficits in maintaining concentration. (Tr. 186). That deficiency will be rectified with an appropriate *Mascio* analysis of Ms. Rice's ability to sustain work.